UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER C. RUSSO, JR.,

                              Plaintiff,

                v.                              1:05-CV-1252

SYSCO FOOD SERVICES OF ALBANY, L.L.C.,
GAIL ALLEN, and RAY SCHIFFER,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

POKLEMBA & HOBBS, L.L.C.                         JOHN J. POKLEMBA, ESQ.
Attorneys for Plaintiff                         GARY C. HOBBS, ESQ.
358 Broadway, Suite 307
Saratoga Springs, New York 12866

BOND, SCHOENECK & KING, P.L.L.C.                NICHOLAS D'AMBROSIO, ESQ.
Attorneys for Defendants
111 Washington Avenue
Albany, New York 12210-2280

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Peter C. Russo, Jr., ("plaintiff") brings this action against defendants SYSCO

Food Services of Albany, L.L.C. ("SYSCO"), SYSCO president Gail Allen ("Allen"), and

SYSCO vice president Ray Schiffer ("Schiffer") (collectively "defendants") under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-301.  Specifically, plaintiff asserts

four causes of action: <u>first</u>, disability discrimination against SYSCO under the ADA; <u>second</u>, disability discrimination against SYSCO under the NYSHRL; <u>third</u>, age discrimination against SYSCO under the NYSHRL; and <u>fourth</u>, disability discrimination against Allen and Schiffer under the NYSHRL.

Plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants oppose. Defendants cross-move for summary judgment. Plaintiff opposes. Oral argument was heard on February 23, 2007, via videoconference in Albany and Utica, New York. Decision was reserved.

## II. <u>FACTS</u>

SYSCO is a food services corporation based in the town of Halfmoon, Saratoga County, New York.[1] SYSCO employs approximately 521 employees at its office and warehouse. Approximately half of its employees are truck drivers or work in the warehouse.

In 1975, SYSCO hired plaintiff as a part-time warehouse operator. In or around 1982, SYSCO employed plaintiff as a full-time commercial truck driver, a position that he held until the events giving rise to this litigation.

---

[1] The employer defendant in this case, SYSCO Food Services of Albany, L.L.C., is a subsidiary of the larger SYSCO Corporation. In this memorandum-decision "SYSCO" refers only to the employer defendant, not its parent corporation.

On May 24, 2001, plaintiff experienced a grand mal seizure.[2]  He commenced a short-term disability leave the next day.  Shortly thereafter, his neurologist, Dr. James Wymer ("Dr. Wymer"), diagnosed him with partial epilepsy[3] with a secondary generalization.[4]  Plaintiff began taking anti-seizure medication and, in November 2001, commenced a long-term disability leave.

In August 2002, plaintiff sent a letter to defendant Allen, SYSCO's president, informing her that Dr. Wymer found him unable to work as a truck driver but otherwise cleared him to return to work.  He requested a "reasonable accommodation within the scope of [his] current position and/or other positions within [his] current union status."  (Defs.' Notice of Mot. Ex. G.)  Plaintiff's letter was referred to Victor Ragusa ("Ragusa"), SYSCO's vice president of employee services.  Ragusa requested that plaintiff undergo a medical examination by Dr. Ronald Musto ("Dr. Musto"), an internist and SYSCO's company physician.  In September 2002, Dr. Musto performed a fifteen-minute physical examination of

---

[2]  A "grand mal seizure," also known as a "generalized tonic-clonic seizure," is defined as:

[A] generalized seizure characterized by the sudden onset of tonic contraction of the muscles often associated with a cry or moan, and frequently resulting in a fall to the ground.  The tonic phase of the s[eizure] gradually give[s] way to clonic convulsive movements occurring bilaterally and synchronously before slowing and eventually stopping, followed by a variable period of unconsciousness and gradual recovery.

Stedman's Medical Dictionary 1592 (26th ed. 1995).

[3]  "Partial epilepsy," also known as "focal epilepsy," is defined as: "[E]pilepsy of various etiologies characterized by focal seizures or secondarily generalized tonic-clonic seizures.  Ictal symptoms are often related to the brain region where the seizure begins focally."  Stedman's Medical Dictionary at 584.

[4]  "Secondary generalized epilepsy" is defined as:

[A] group of epilepsy syndromes of diverse etiologies with diffuse or multifocal cerebral involvement.  Patients typically have a variety of generalized seizure types, including tonic, atonic, myoclonic, atypical absence, and generalized tonic-clonic seizures.  Partial seizures may also occur.  One classic syndrome is the Lennox-Gastaut syndrome.

Stedman's Medical Dictionary at 585.

plaintiff, and later received plaintiff's medical records from Dr. Wymer.  Dr. Musto produced a

written report stating that he agreed with Dr. Wymer's diagnosis of partial epilepsy with

secondary generalization and that plaintiff was not able to hold a commercial driver's license.

In the report, Dr. Musto also stated the following:

> Whether or not he is qualified to operate a forklift or to drive a vehicle under
> company auspices is a matter of company policy in this regard.  My medical
> opinion is that he be seizure free for 2 years on anti-convulsant therapy
> with regular medical follow-up and at least every 6 month reevaluation
> before considering these latter options.

Id. Ex. Q.

Shortly thereafter, SYSCO informed plaintiff that Dr. Musto agreed with Dr. Wymer

"with respect to the commercial operation of a vehicle or equipment."  Id. Ex. I.  Plaintiff

requested clarification from Dr. Wymer regarding his work limitations, and Dr. Wymer sent

him a letter stating the following:

> [I]t is my understanding that you cannot return to your occupation as a truck
> driver. . . . With regards to your ability to operate equipment within the
> warehouse, as long as you remain compliant with your [anti-seizure
> medication] as you have, . . . you should be able to work this equipment.
> Specific company policies will have to be discussed with Dr. Musto, but I
> see no contraindication to a power jack or forklift.

Id. Ex. J.  Plaintiff forwarded a copy of Dr. Wymer's clarification letter to Ragusa and

requested that he be given a warehouse position.  The duties of a SYSCO warehouse

employee include the operation of forklifts and motorized pallet jacks.  SYSCO forklifts weigh

9,371 pounds and can carry a load of 4,000 pounds, while the pallet jacks weigh 3,135

pounds and can carry a load of 8,000 pounds.  Both vehicles have lifting forks and are used

to move large product loads.

At some point, John Cammarene ("Cammarene"), SYSCO's transportation manager, advised plaintiff that a night transportation supervisor position had become available.[5]  In December 2002, Ragusa told plaintiff that the problem was resolved and that SYSCO had a position for him.  Ragusa asked plaintiff to meet with Edward Caples ("Caples"), SYSCO's vice president of operations, to discuss the possibility of plaintiff filling the night transportation supervisor position.  At his deposition, plaintiff testified that prior to the meeting, defendant Schiffer, SYSCO's vice president, also told him that SYSCO had a position for him and he should take it; however, Schiffer has testified that he made no such statement.  During the meeting, plaintiff and Caples discussed the duties and salary of the position.

After his meeting with Caples, SYSCO informed plaintiff that he was ineligible for the night transportation supervisor position because he no longer had a commercial driver's license.  Truck-driving is a duty occasionally required of night transportation supervisors.

In an attempt to find employment for plaintiff at SYSCO, plaintiff's union representative, Rocco Losavio ("Losavio"), discussed potential opportunities with Ragusa.  At his deposition, Losavio testified that he telephoned Caples to find out why plaintiff was deemed ineligible for the night transportation supervisor position.  During their conversation, which Caples had on speaker-phone, Losavio heard Neal Russell ("Russell"), SYSCO's director of operations, state that "Pete Russo is nuts if he thinks that he's going to [be] sitting behind a desk and I am going to go out and drive everyday."  (Pl.'s Notice of Mot., Losavio Dep. at 31.)  However, both Caples and Russell have testified that no such conversation took

---

[5]  Plaintiff has testified that this conversation took place in December 2002; however, defendants dispute that date, as Cammarene has testified that he does not recall when it took place.

place.  Losavio has also testified that during his efforts on behalf of plaintiff he telephoned Schiffer and asked him "what somebody at Pete's age . . . was supposed to do [for work]," and Schiffer replied "he should become a Wal-Mart greeter."  Id. at 45.  Schiffer has testified that he never made that comment, let alone spoke to Losavio about plaintiff.

In July 2003, plaintiff sent a letter to Lynn Lott ("Lott"), SYSCO's director of personnel, requesting "a reasonable accommodation according to the Americans With Disabilities Act."  (Defs.' Notice of Mot. Ex. K.)  He also stated in the letter that he was "willing to perform whatever service Sysco deems necessary" even if it meant giving up his seniority to take a warehouse position.  Id.  In August 2003, Lott informed plaintiff that no warehouse positions were available at that time and that, in any case, Dr. Musto recommended that he be seizure-free and on anti-seizure medication for two years with follow-up evaluations every six months thereafter before being allowed to operate a forklift or any other SYSCO vehicle.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In July 2005, the EEOC determined that SYSCO is an "employer" and plaintiff is a "qualified individual with a disability" within the meaning of the ADA, and that plaintiff was denied a reasonable accommodation because of his disability in violation of the ADA.  Specifically, the EEOC found that plaintiff was able to perform the duties associated with a warehouse position and that Dr. Musto's recommendation that plaintiff remain seizure-free and on anti-seizure medication for two years before being allowed to operated a forklift or other SYSCO vehicle was "arbitrary and capricious."  (D'Ambrosio Affirm'n Ex. JJ.) Additionally, the EEOC found no evidence that driving a forklift or other such vehicle is an essential function of the warehouse positions; and that evidence showed that such tasks are

assigned to those with the most seniority, not someone like plaintiff who would have had the lowest seniority.

In spite of the EEOC's determination, the parties did not resolve the dispute informally.  Upon receiving a Notice of Right to Sue from the EEOC, plaintiff filed this action.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving

party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 1356 (1986);  Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

### B.  ADA Claim

Both parties move for summary judgment on the ADA claim.  The issues with

respect to that claim are whether under the ADA (1) plaintiff is an "individual with a disability";

(2) plaintiff was "qualified" for the positions that he sought; and (3) plaintiff suffered an

adverse employment action because of his disability.

The ADA provides:  "No covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."  42

U.S.C.A. § 12112(a) (2005).

### 1.  Disability

As stated above, the ADA protects only "individuals with a disability."  Under the

ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an impairment."  §

12102(2).[6]

To be sure, epilepsy constitutes a "physical or mental impairment" under the ADA.

See 29 C.F.R. § 1615.103(1)(ii) (2006); Sutton v. United Air Lines, Inc., 527 U.S. 471, 488,

---

[6] In this case, plaintiff argues, and defendants dispute, that he has a physical or mental impairment
(epilepsy) that substantially limits a major life activity (working) and that SYSCO regarded him as having such
an impairment.

119 S. Ct. 2139, 2149 (1999); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001).  Generally, whether a particular impairment substantially limits a major life activity is a question answered on a case-by-case basis.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 692 (2002) (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j) (2001).  While the Second Circuit has suggested that epilepsy always constitutes a disability under the ADA, Lovejoy-Wilson, 263 F.3d at 216 ("[The defendant] does not dispute that the plaintiff suffers from epilepsy or that epilepsy constitutes a disability under the ADA, a proposition that is well established"), it is not entirely clear whether that court was using the word "disability" as a synonym for "impairment" or as it is defined by the ADA – an impairment that substantially limits a major life activity.  Thus, further inquiry into whether plaintiff's epilepsy substantially limits a major life activity is warranted.

A "major life activity" is one that is of "central importance to daily life," Toyota Motor, 534 U.S. at 197, 122 S. Ct. at 691, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i). Generally, a major life activity is said to be "substantially limited" if one is unable to perform it or significantly restricted in performing it.  Id. § 1630.2(j)(1).  The major life activity of working is substantially limited if the plaintiff is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Sutton, 527 U.S. at 491, 119 S. Ct. at 2151 (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  In other words, "[t]he inability to perform in a single, particular job does not constitute a substantial limitation in the major life activity of working.'" Id.

In this case, it is undisputed that plaintiff suffers from epilepsy. It is also undisputed that plaintiff's epileptic condition permanently precludes him from holding a commercial driver's license. Thus, plaintiff is unable to work as a commercial truck driver. That plaintiff's epilepsy renders him unable to perform that particular job is not enough to meet the "substantial limitation" test. Plaintiff contends that since he is unable to perform the job of commercial truck driver, and defendants have "disqualified [him] from all safety-sensitive positions, including commercial driving, and all work with heavy equipment or machinery," he has been "disqualified from a class of jobs and a broad range of jobs of various classes." (Pl.'s Mem. 5.) However, defendants' disqualification of plaintiff from a class or range of jobs does not necessarily mean that he is actually unable to perform or significantly restricted in performing that class or range of jobs because of his impairment. Thus, plaintiff has not shown that, as a matter of law, he is unable to perform a class or broad range of jobs.

But, that is not the end of the inquiry. As stated above, under the ADA, a plaintiff is also considered "an individual with a disability" if his employer regards him has having a physical or mental impairment that substantially limits a major life activity. See 42 U.S.C.A. § 12102(2). Thus, irrespective of whether plaintiff's epilepsy actually does substantially limit his ability to perform a class or broad range of jobs, if SYSCO regarded it as so limiting, he is "an individual with a disability" under the ADA.

In this case, SYSCO's company physician, Dr. Musto, concluded that plaintiff's epilepsy precludes him from holding a commercial driver's license. Dr. Musto also concluded that plaintiff should not operate a forklift or drive a company vehicle until he could show that he was on medication and seizure-free for two years. He communicated his conclusions to SYSCO and SYSCO relied on them in denying plaintiff positions in the transportation

department and warehouse.  This indicates that SYSCO regarded plaintiff as unable to work in any job requiring the operation of trucks, forklifts, or any other company vehicle.  Positions requiring the operation of all vehicles and heavy equipment constitutes a class of jobs.  Thus, plaintiff has shown that SYSCO regarded his epilepsy as a substantial limitation on his ability to work.

Therefore, as a matter of law, plaintiff is an individual with a disability under the ADA.

### 2.  Qualifications

Having determined that plaintiff is an individual with a disability, the next step is determining whether he was a "qualified" for the positions he sought.  The ADA defines the term "qualified individual with a disability" as:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . . [C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C.A. § 12111(8).

The Code of Federal Regulations defines "essential functions"as fundamental rather than marginal employment functions.  29 C.F.R. § 1630.2(n)(1).  The Regulations also provide that a job function may be considered essential because the reason the position exists is to perform that function, a limited number of available employees can perform that function, or the function is highly specialized and requires special expertise.  Id. § 1630.2(n)(2).  The Regulations also provide that, in addition to considering any written job

descriptions in determining what functions of a job are essential, consideration may be given to the amount of time spent on the job performing the function. Id. § 1630.2(n)(3)(iii).

With respect to term "reasonable accommodation," the ADA provides that it may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examination, training materials or policies . . . and other similar accommodations for individuals with disabilities." § 12111(9).

To reiterate, it is undisputed that plaintiff's epileptic condition permanently precludes him from holding a commercial driver's license. Therefore, plaintiff is clearly unqualified for the commercial truck driver position because he is unable to perform its single most essential function. However, plaintiff sought a number of other positions with SYSCO. In August 2002, plaintiff sent a letter to Allen requesting reasonable accommodation within the commercial truck driver position or, alternatively, within other union positions. In the letter, plaintiff suggested that SYSCO create a positions whereby he could train commercial truck drivers or act as a "helper on general dispatches." (Defs.' Notice of Mot. Ex. G.) Defendants do not dispute that plaintiff would be able to perform the essential functions of either such position. Indeed, the fact that he worked as a commercial truck driver at SYSCO for almost twenty years indicates that he is more than qualified to train or "help" in the transportation department. However, no such positions existed at that time and plaintiff has not shown, or even attempted to show, that the creation of either such position constituted a reasonable accommodation under the ADA.

In December 2002, plaintiff actively sought the night transportation supervisor position. In support of his argument that truck-driving is not an essential function of the

transportation supervisor position, plaintiff selectively points to a portion of Cammarene's deposition testimony in which he briefly describes the duties of that position but does not mention truck-driving.  Defendants, on the other hand, point to a subsequent self-serving affidavit in which Cammarene states that transportation supervisors must drive "nearly everyday."  (Cammarene Aff. ¶ 20.)

However, in this case there is a written job description dated January 2002 which lists "[w]orking on the road on occasion" as one of the position's "principal accountabilities." (Defs.' Notice of Mot. Ex. N.)  To be sure, "principal accountabilities" is synonymous with "essential functions."  While the phrase "working on the road" is not entirely free from ambiguity, it reasonably can be said to mean truck-driving.[7]  Thus, according to the written job description, occasional truck-driving is an essential function of the transportation supervisor position.  Since plaintiff is unable to obtain a commercial driver's license, it would appear that he is unqualified for that position.  However, while not necessarily dispositive, the frequency with which an employee must perform a function is a factor in assessing whether that function is essential to the job.  Since the job description lists truck-driving as a principal accountability, but also states that it is only an occasional duty, questions of fact exist as to whether truck-driving truly is an essential function of the transportation supervisor position. Indeed, that truck-driving is required only "on occasion" indicates that plaintiff may have been

---

[7] Surely it does not mean that an essential function of the transportation supervisor position is to "work on" the road as one would "work on" a car.  Equally implausible is the notion that the position demands mere physical presence on "the road" when working.  (One imagines a SYSCO transportation supervisor sitting at a desk situated in the middle of a busy highway.)  In other words, the phrase "on the road" was not meant literally; rather, it was meant as author Jack Kerouac (see Jack Kerouac, On the Road (Penguin Books 1976) (1957)), journalist Charles Kuralt (see On the Road (CBS television broadcast 1967-80)), and musician Willie Nelson (see Willie Nelson, On the Road Again, on Honeysuckle Rose (CBS Records 1980)) meant it – as an idiom for "traveling by vehicle."

able to perform that job with reasonable accommodation.  Ultimately, however, questions of fact prevent a determination as to whether, with or without reasonable accommodation, plaintiff is qualified for the transportation supervisor position.

In July 2003, plaintiff actively sought the vacant night warehouse selector position. A written notice of that opening dated July 2003 indicates that SYSCO was looking for experienced warehouse selectors and lists the job requirements as "physical work, constant bending and heavy lifting."  (Russo Aff. Ex. J.)  However, defendants point to a written description of the "warehouse worker" position dated October 1992, which cites frequent operation of a pallet jack and forklift as a physical activity of he job.  While the operation of a pallet jack and forklift appears to be an essential function of the warehouse selector position, questions of fact exist with respect to whether plaintiff is able to operate such vehicles. Plaintiff's neurologist, Dr. Wymer, is of the opinion that plaintiff is so able, while defendants' physician (an internist), Dr. Musto, is of the opinion that plaintiff must remain seizure-free for two years before being so able.  The EEOC found that Dr. Musto's opinion, upon which defendants relied in determining that plaintiff is unqualified for the warehouse selector position, is arbitrary and capricious.  In any event, there are questions of fact as to whether plaintiff is qualified for the warehouse selector position.

Plaintiff has provided evidence that several positions became available between August and December 2002 for which he likely was qualified; however, he has not shown that he applied for, or even expressed interest in, these positions.  Conversely, plaintiff has demonstrated that in July 2003 he informed SYSCO that he was "willing to perform whatever service Sysco deem[ed] necessary," (Defs.' Notice of Mot. Ex. K), but has not demonstrated

that there were vacant positions for which he was qualified (other than those discussed above) at that time.

Nonetheless, questions of fact exist with respect to whether plaintiff was qualified for the transportation supervisor and warehouse selector positions.

### 3. **Adverse Employment Action**

Finally, it must be determined whether plaintiff suffered an adverse employment action because of his disability.  Defendants' refusal to hire plaintiff as a transportation supervisor or warehouse selector and eventual termination of his employment with SYSCO surely constitute adverse employment with actions.  Moreover, based on the evidence presented by both parties, a reasonable jury could find that defendants took these actions because of plaintiff's disability.

Therefore, both parties' motions for summary judgment on the ADA claim against SYSCO (first cause of action) will be denied.

### C. **NYSHRL Claims**

Both parties also move for summary judgment on the NYSHRL claims.  The issues with respect to those claims are whether under the NYSHRL (1) plaintiff can perform in a reasonable manner the activities involved in the job sought; (2) plaintiff suffered an adverse employment action because of his age; and (3) Allen and Schiffer can be held individually liable for the alleged discrimination.

### 1. **Disability Discrimination Claim**

In order to make out a prima facie claim of disability discrimination under the NYSHRL, a plaintiff must show that with or without reasonable accommodations he could

perform in a reasonable manner the activities involved in the job sought.  N.Y. Exec. Law §
292(21) (McKinney 2005).

As defendants point out, the inquiry into whether plaintiff can perform in a
reasonable manner the activities involved in the job sought under the NYSHRL is the same
as the inquiry into whether plaintiff is qualified to perform the essential functions of the job
sought under the ADA.  As discussed in Section III.B.2 above, there are questions of fact as
to whether plaintiff is qualified to perform the essential functions of the transportation
supervisor and warehouse selector positions.  The same questions of fact exist with respect
to the NYSHRL disability discrimination claim.

Therefore, both parties' motions for summary judgment on that claim against
SYSCO (second cause of action) will be denied.

### 2.  Age Discrimination Claim

In order to make out a prima facie claim of age discrimination under the NYSHRL, a
plaintiff must show, among other things, that he was discriminated against because of his
age.  N.Y. Exec. Law § 296(1) (McKinney 2005).

In this case, plaintiff's age discrimination claim is based entirely on the allegation
that when Losavio telephoned Schiffer and asked him "what somebody at Pete's age . . . was
supposed to do [for work]," Schiffer replied "he should become a Wal-Mart greeter."  (Pl.'s
Notice of Mot., Losavio Dep. at 45.)  Defendants dispute that this communication ever took
place and have submitted evidence in support of their position.  In any case, this single
allegation, even if taken as true, is simply not enough to establish a prima facie case of age
discrimination.

Therefore, defendants' motion for summary judgment on plaintiff's age discrimination claim under the NYSHRL against SYSCO (<u>third</u> cause of action) will be granted.

### 3. **Individual Claims**

In order to make out a prima facie claim against the individual defendants, plaintiff must establish the underlying NYSHRL disability discrimination claim, which he has done, and show that Allen and Schiffer actually participated in the discrimination.  Questions of fact have been presented as to whether and how much Allen and Schiffer knew of plaintiff's efforts to obtain another position at SYSCO, and as to the level of their involvement in the decision not to hire him.

Therefore, both parties' motions for summary judgment on the disability discrimination claims against Allen and Schiffer (<u>fourth</u> cause of action) will be denied.

## IV. **CONCLUSION**

As a matter of law, plaintiff is "an individual with a disability" under the ADA, but questions of fact exist with respect to all other elements of the ADA claim.  Similarly, questions of fact exist with respect to plaintiff's disability discrimination claims under the NYSHRL, but plaintiff has failed to make out a prima facie case of age discrimination.

Accordingly, it is

ORDERED that:

1.  Defendants' motion for summary judgment on plaintiff's age discrimination claim under the NYSHRL against SYSCO is GRANTED;

2.  The <u>third</u> cause of action is DISMISSED; and

3.  Both parties' motions for summary judgment are otherwise DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  May 18, 2007
        Utica, New York.